C. H. WOMBLE, Ex'r., &c., and others *v.* A. M. GEORGE and wife.

In a case where the creditors of an estate refused to receive Confederate money for their debts, it was held that the executor was not chargeable for failing to sell slaves which came into his hands in May 1863, and were afterwards lost by emancipation ; but that he was chargeable as for the subsequent hires of such slaves.

An executor is not chargeable with the rents and profits of the realty.

He is not to be credited with sums paid for taxes due upon *the land* after the testator's death ; nor with money advanced to procure supplies for the widow and her family after her husband's death.

(*Finger* v. *Finger, ante,* 188 ; *Floyd* v. *Herring, ante,* 409, and *Fike* v. *Green, ante,* 665, approved.)

EXCEPTIONS to a report, tried by *Tourgee, J.,* at Spring Term 1870 of CHATHAM Court.

The plaintiff C. H. Womble, as executor of Cornelius Womble, deceased, filed his bill in equity, alleging the loss of the personalty belonging to his testator by *accident,* connected with the results of the late war, and asking for license to sell the realty, for the purpose of paying debts. The answer set up as a defence, that the personalty had been lost, not by *accident,* but by the *laches* of the plaintiff's predecessor in his office as executor. There was a reference upon this issue. The referee made a report, and exceptions were filed thereto by both parties.

The testator died in March 1863, bequeathing to his widow and children a considerable estate, real and personal, and appointing his four sons executors. Of these Jehu qualified at May term 1863. He was conscribed into the Confederate army, October 6th, 1864, was afterwards captured, and died in captivity in May 1863. The plaintiff qualified as executor at November term 1865. This bill was filed to Fall term 1867.

It is unnecessary to state the contents of the will, except

24

that the testator devised to the defendants a tract of land "after paying me the purchase money for said land, which is about $480, and if they fail to pay the purchase money with the lawful interest, &c., as much as may remain unpaid is to be taken out of their portion of my estate." In the event it turned out that there was no *portion* of the estate going to the defendants; whereupon they claimed that, as this result was owing to the laches of the executor, he, and not they, were chargeable with the $430 and interest. On the other hand the executor claimed that it was a subsisting debt, charged upon the land, and to be paid to him as a part of the personal assets.

After the qualification of Jehu Womble, upon learning that the creditors of the estate would not receive Confederate money in payment of their debts, he turned over the personalty, consisting of slaves, stock upon the farm, furniture, &c., &c., with the general consent of the creditors and legatees, to his mother, the widow, for safe-keeping, and they remained with her upon the land of the testator, the slaves, until they were emancipated, and the other property, until her death in October 1865.

Upon the qualification of the plaintiff, it was found that the personalty, other than slaves, was much wasted and depreciated. A sale of what could be found thereof was had. The proceeds being insufficient for the purpose of paying the debts, this bill was filed.

So much of the report as the discussion in the Opinion renders it necessary to state, is:

1. That Jehu Womble was to be charged with the value of the slaves and other personal property, inventoried by him.

2. That he was to be charged also with the rents of the land.

3. That he was to be credited with receipts for taxes paid upon the property of the testator for 1863-'4-'5.

4. That an account presented by one S. T. Womble for $94.02, was not due from the estate.

The facts in connection with this item were stated to be, that it was for thirty bushels of wheat lent by S. T. Womble to Jehu to enable him to pay an account due by the estate to a physician, for attendance upon the testator.

5. He did not charge him with the proceeds of the lands whilst in his mother's possession.

Each party filed several exceptions to this report. Of these it is important to state only the following:

Exception 3rd *by the plaintiff*, That Jehu Womble, was charged with the value of the slaves;

4th. That he was charged with the other personal propety by him inventoried;

5th. That the account of S. T. Womble was not allowed.

Exception 2d, *by the defendant*, Because the referee did not charge Jehu Womble with the hire of the slaves for 1864, and parts of 1863 and 1865;

3d. Because he credited him with the tax receipts;

5th. Because he credited him with money paid by him for salt, cotton, a plow, &c., furnished to the widow after the testator's death.

His Honor overruled all the exceptions upon both sides. Each party appealed from so much of the judgment as overruled the exceptions filed by them respectively.

*Headen* and *Phillips. & Merrimon,* for the plaintiffs.
*Manning, contra.*

DICK, J. The exceptions filed by the plaintiff and defendants raise objections to nearly every part of the report of the referee. We will consider the legal questions which

arise on the report, without following the precise order in which they are presented.

Cornelius Womble died in the Spring of 1863, leaving a will in which he disposed of his estate by various devises and bequests. At May Term 1863, the will was admitted to probate, and Jehu J. Womble, one of the executors, was duly qualified. As there was no money on hand, under ordinary circumstances it would have been the duty of the executor to sell the personal property, and pay off the debts of the estate. Upon inquiry, he ascertained that the principal creditors would not receive Confederate money in payment of their debts.

In the summer of 1863 Confederate money was the only currency of the country, and the personal property could not have been sold for its full value if payment had been demanded in specie.

Under these circumstances, the executor, with the assent of most of the creditors and other persons interested, placed the property in the possession of the widow, the principal legatee, to be kept until there should be a more favorable time to make a sale. We think that the executor acted wisely in not selling the property, and that he is only accountable for such property as was wasted or lost by the negligence of his agent. He was compelled to have an agent to take care of the property, as he was conscripted and carried to the army in 1864, and died in the military service. He selected a prudent agent who was interested in taking good care of the property, and is not liable for loss occasioned by ordinary use, natural causes, accident, or by operation of law: *Finger* v. *Finger, ante* 183 ; *Fike* v. *Green, ante* 665.

The real estate was not under the control of the executor, and the rents and profits did not constitute assets. The real estate passed to the devisee subject to the power of the executor to obtain a license to sell for the payment of debts

WOMBLE, Ex'r, and others *v.* GEORGE and wife.

upon a deficiency of personal assets; *Floyd* v. *Herring, ante* 409; *Fike* v. *Green, ante* 665.

The executor, prompted by natural affection, allowed the negroes to remain on the farm, and labor for the support of his aged mother and dependent sisters, but in law he is chargeable for hire, if all the negroes, taken together, would have yielded a profit. His kindness to his mother did not free him from legal obligation, but it ought to appeal successfully to the generosity of his brothers and sisters.

The fourth exception of the defendant must be allowed so far as it relates to taxes on the land, as it was not the duty of the executor to pay such taxes.

The fifth exception of the defendant must be allowed, as the articles were not purchased for the benefit of the estate. But the amounts must be properly scaled.

The fifth exception of the plaintiff must be allowed, as the account of S. G. Womble was a debt against the estate.

The sum of $430 mentioned in the will, is a part of the personal estate, and is a charge upon the Moran tract of land, and must be collected by the present executor and accounted for in his settlement.

As the report will be reformed, we have not noticed the exceptions as to the commissions allowed.

There was error in the ruling of his Honor upon the exceptions, and the report must be reformed in the particulars above indicated.

As both parties appealed, and some of the exceptions of each side are allowed, neither party is entitled to costs in this Court.

Let this be certified.

PER CURIAM.                     Ordered accordingly.