CLARK, C. J., did not sit.
This action was brought to set aside the deeds, hereinafter mentioned, one by Plummer A. Davis to Billy Perry, for the land described therein, dated 6 February, 1912; a mortgage of the same land, dated 20 August, 1912, by Billy Perry to J. D. Hill, to secure an alleged indebtedness of $50, and a deed from Billy Perry to J. D. Hill for the same land, dated 13 September, 1912, for the recited consideration of $225. The grounds upon which this relief was asked are the mental incapacity of the grantor at the time he signed the deed to Perry, and the fraud and undue influence of Perry in procuring the same. *Page 160 
(123) Plaintiffs allege in the complaint that J. D. Hill was not a bona fide purchaser for value and without notice of said facts, but purchased the land, if he paid any consideration therefor, with full notice thereof. It is further alleged that the deeds are void for want of a sufficient description of the land, the same being so uncertain and indefinite as that no land passed by the deeds. The following is the description: "Said P. A. Davis does agree to give Bill Perry ten (10) acres of land in consideration of services as servant rendered by Bill Perry, the receipt of which is hereby acknowledged; has bargained and given and by these presents do bargain and convey to said Bill Perry, heirs and assigns, a certain tract or parcel of land in Franklin County, State of North Carolina, adjoining the lands of P. A. Davis, surrounded by the land of P. A. Davis, known as the Junius Alston place." The mortgage describes it as follows: "A certain piece or tract of land lying and being in Franklin County, State aforesaid, in Sandy Creek Township, and described and defined as follows, towit: Ten acres of land surrounded by the lands of P. A. Davis's estate, known as the Junius Alston place; it being the tract of land conveyed by P. A. Davis to the party of the first part during the year 1912, record of same is hereby referred to and made a part hereof." The deed from Perry to Hill is more definite in its description of it, which follows: "A certain tract or parcel of land in Franklin County, State of North Carolina, adjoining the lands of P. A. Davis's estate and others, bounded as follows, viz.: Beginning at the spring now used by Bill Perry, which is located about 200 yards from the said Bill Perry's dwelling house, in a northerly direction and running thence in a northwestern direction to white oak corner for lands of estate of P. A. Davis, deceased, and Bill Perry, thence in a northerly direction down plantation path to a rock and peach tree; then from said rock and peach tree in westerly direction to the spring and point of beginning, containing 10 acres, more or less, and being the tract of land conveyed by P. A. Davis during the month of February, 1912, and known as the Junius Alston place."
The following is the testimony relating to the location and identity of the land:
Billy Perry testified: "We always called this place with the 10 acres of land the `Junius Alston' place, because he was the last man that lived there before I went there. Everybody in the neighborhood called it the Junius Alston place. There was about 10 acres of open land around the house. I reckon I know the boundaries of it. Mr. Davis went around it himself. I could go around it and point out the boundary lines. I gave Mr. J. D. Hill a deed for this land some time in September after Mr. Davis's death. The description in that deed is the same as it was generally known at the time the deed was made to me. . . . When I gave *Page 161 
Mr. Hill the mortgage for $50 in August, 1912, he was reading (124) the deed, and he got the description from the deed, I suppose. When I gave him the deed for the land, he saw the lines on the old deed and copied it from that. I could not call the lines, but if I was there I could go around them."
Isaac Davis testified: "While we were talking about the land, he said he would let me have 10 acres that he sold to Bill and let him have 10 acres nearer the house, so he could wait on him. I told him the 10 acres did not have any pine straw, but he said he had rather for me to take the 10 acres, and he said that he was going to let Bill have 10 acres near the house, so he would be near him. Bill plowed the 10 acres near me and set out an orchard, intending to build his house near me. He did not get down there, because he was kept busy waiting on Mr. Davis. Mr. Davis said he would sell him a place that had a house on it. He sold him the place that they called the Junius Alston place. I was not there when it was stepped off. I only know he said he was going to let him have 10 acres. Bill fixed the place up and moved over there after he got the deed."
The following verdict was returned by the jury:
"1. Was the deed of P. A. Davis to Billy Perry void for lack of description? Answer: No.
"2. Was the said P. A. Davis mentally unsound and incapable of making a deed at the time he signed the paper-writing in question? Answer: No.
"3. Was the deed from P. A. Davis to Billy Perry executed in consideration of services rendered by Billy Perry or his family to P. A. Davis? Answer: Yes.
"4. Were such services reasonably necessary to the said P. A. Davis? Answer: Yes.
"5. Was the performance of such services a fair consideration for the conveyance of the 10 acres of land? Answer: Yes.
"6. Was the deed from P. A. Davis to Billy Perry executed in pursuance of a contract entered into upon adequate consideration of which P. A. Davis had the benefit and made by Billy Perry in good faith, without fraud or undue influence? Answer: Yes.
"7. Was the deed or paper-writing under which the defendant claims the land in question procured by the fraud and deceit of the defendant Perry? Answer: No.
"8. Did J. D. Hill acquire the said land for value and without notice of any fraud or undue influence, or of the want of mental capacity on the part of P. A. Davis at the time of the execution of the deed to Billy Perry? Answer: Yes."
There were certain remarks of the court upon the motion to (125) nonsuit to which the plaintiff duly excepted. They were as follows: *Page 162 
"I am not going to let a landlord come into this court and acknowledge in a deed that he has received services from a tenant, a negro, and because of some defect in the description of the land which he expresses as a consideration for that much service, the tenant's case is to be dismissed and go. I say that the description may not be what the law requires, and he may not be entitled to hold the land; but I am going to allow him to show, if he can, that he has rendered services that he has not already been paid for."
Upon objection by plaintiff's counsel to these remarks, the court added: "I said what I thought I ought to have said, and you have the right to have the Supreme Court pass upon it. I thought it was understood that I was sitting here as a chancellor to see that justice was done, and I don't intend to violate the law if I can help it; but I do intend that a man shall receive compensation for his services. From what appears from the pleadings of both sides, he is entitled to have the question of the title to the land decided. It may be that legally he would not be entitled to hold the land, but if it should so appear, and the jury should so find, that there were services rendered by the defendant to the testator as consideration for the said land, and for which the defendant has not been paid, then he would be entitled to be paid for such services, and I would not be willing, if it should so appear, that he should have nothing for his sweat. The law would not, upon the pleadings or upon the description in the deed, justify me in dismissing the action; but it may be that he fails to fit the description to the deed. I have given him the benefit of the largest allowance that he was entitled to. I don't believe that any witness testified in support of the contention that there was no such tract. I meant by what I have said that he is entitled, upon the pleadings and the proof which may be offered, to have a jury render its verdict, and I am going to give him an opportunity to show it." Judgment was entered upon the verdict for the defendants, and the plaintiffs appealed, after reserving all of their exceptions.
First, as to the description in the deed of Davis to Perry. It is familiar learning, which was aptly stated by Judge Gaston inMassey v. Belisle, 24 N.C. 170, that every deed of conveyance (or contract) must set forth a subject-matter, either certain in itself or capable of being reduced to a certainty by a recurrence (126) to something intrinsic to which it refers. If the ambiguity in the description be latent, and not patent, oral evidence is admitted to fit the description to the thing intended. We have, therefore, held in *Page 163 Carson v. Ray, 52 N.C. 609, that the words, "my house and lot in the town of Jefferson, Ashe County, N.C." were sufficiently descriptive to let in proof for the identification of the lot, the Court saying in this connection: "A house and lot, or one house and lot in a particular town, would not do, because too indefinite on the face of the instrument itself. See Plummer v. Owens, Busb. Eq., 254; Murdock v. Anderson, 4 Jones' Eq., 77. But `my house and lot' imports a particular house and lot, rendered certain by the description that it is one which belongs to me, and upon the face of the instrument is quite as definite as if it had been described as the house and lot in which I now live, which is undoubtedly good." And to the same effect is the language of this Court in Mfg. Co. v. Hendricks,106 N.C. 485, where it was said: "No decree, however, for specific performance can be granted the defendant unless `his land where he now lives' (the descriptive words of the receipt) is fully identified by competent testimony. These words are clearly susceptible of being applied to a particular well-defined tract of land — id certum est, quodcertum reddi potest — and if the defendant can supply the requisite proof, he will be entitled to relief." Where a contract to convey land described the same as "one tract containing 193 acres, more or less, it being the interest in two shares, adjoining lands of J., B., E., O., and others," it was held to be sufficiently definite to admit parol evidence to identify the land. Farmer v. Batts, 83 N.C. 387. Many cases of the same kind will be found collected in Blow v. Vaughn, 105 N.C. 198. The case ofMcLawhorn v. Worthington, 98 N.C. 199, is exactly in point to sustain the description here, as there the description was, "a part of the John Tripp land, adjoining the lands of B. W. and others, containing 100 acres,"the only difference between the two cases being that the description in this deed is the more definite of the two. See, also, Bateman v. Hopkins,157 N.C. 470, where the description was, "the farm on which I now live," and Murdock v. Anderson, 57 N.C. 77, where the descriptive words were, "my house and lot in the town of Hillsborough," which is not substantially unlike this case. Hawes v. Lumber Co.,166 N.C. 101.
This brings us to the remarks of the court in connection with the motion to nonsuit. We think this language was calculated to prejudice the plaintiffs and unduly to weaken their cause before the jury. It should not have been used. The general tendency of it all was that it required the plaintiffs to carry a greater burden than the law imposed upon them. A judge may clearly indicate to a jury what impression the testimony has made upon his mind or what deduction should be made therefrom, without expressly stating his opinion upon the facts. This (127) may be done by his manner or peculiar emphasis or by his so arraying and presenting the evidence as to give one of the parties an undue advantage over the other; or, again, the same result will follow the use *Page 164 
of language or a form of expression calculated to impair the credit which might otherwise and under normal conditions be given by the jury to the testimony of one of the parties. S. v. Dancy, 78 N.C. 437; S. v. Jones,67 N.C. 285. It can make no difference in what way the opinion of the judge is conveyed to the jury, whether directly or indirectly. The act forbids an intimation of his opinion in any and every form, the intent of the law being that each of the parties shall have an equal and a fair chance before the jury. Withers v. Lane, 144 N.C. 184. The learned and able judge who presided at the trial, inspired, no doubt, by a laudable motive and a profound sense of justice, was perhaps too zealous that what he conceived to be the right should prevail; but just here the law, conscious of the frailty of human nature at its best, both on the bench and in the jury box, intervenes and imposes its restraint upon the judge, enjoining strictly that he shall not in any manner sway the jury by imparting to them the slightest knowledge of his own opinion of the case. The English practice and also the Federal practice permit this to be done, but not ours. With us the jury are the sole and independent triers of the facts, and we hold the right of trial by jury to be sacred and inviolable. Any impairment of this right to have the jury try the facts uninfluenced by any intimation of opinion of the court in regard thereto, is forbidden by express enactment. Revisal, sec. 535. What Judge Nash
said in Nash v. Morton, 48 N.C. 3, is applicable here: "We all know how earnestly, in general, juries seek to ascertain the opinion of the judge who is trying the cause upon the controverted facts, and how willing they are to shift their responsibility from themselves to the court. The governing object of the act was to guard against such results and to throw upon the jurors themselves the responsibility of responding to the facts of the case. Nor is it proper for a judge to lead the jury to their conclusion on the facts." We follow this clear statement of the rule inWithers v. Lane, supra, where we said: "The books disclose the fact that able and upright judges have sometimes overstepped the limit fixed by the law; but as often as it has been done this Court has enforced the injunction of the statute and restored the injured party to the fair and equal opportunity before the jury which had been lost by reason of the transgression, however innocent it may have been; and we must do as our predecessors have done in like cases. Our view that the charge violates the statute is sustained by the cases already cited, to which the following may be added: S. v. Bailey, 60 N.C. 137; S. v. Thomas, 29 N.C. 381; S. v. Pressley, 35 N.C. 494; S. v. Rogers, 93 N.C. (128) 525; S. v. Dick, 60 N.C. 440; Reel v. Reel, 9 N.C. 63; Reiger v. Davis, 67 N.C. 185; S. v. Davis, 15 N.C. 612; Sprinkle v.Martin, 71 N.C. 411. Powell v. R. R., 68 N.C. 395, seems to be very much in point, and the following language of Justice Rodman is *Page 165 
applicable to this case: `We think that the general tone of the instructions is warmer and more animated than is quite consistent with the moderation and reserve of expression proper in stating the evidence to the jury in a plain and correct manner, and declaring and explaining the law arising thereon. There are passages which a jury might fairly understand (though not intended) as expressing an opinion on the facts.'" Our statute was adopted to maintain inviolate that popular arbiter of rights, trial by jury, which was, without some such provision, constantly in danger from the will of the judge acting upon men mostly passive in their natures, and disposed to shift responsibility from their shoulders to his. S. v. Dick, 60 N.C. 440. Not the slightest intentional wrong can be imputed to the judge who presided at the trial below. The error is one of those casualties which may take place to the most circumspect in the progress of a cause being tried on the circuit, but when once committed, however, it was irrevocable. It was almost, if not quite, impossible to eradicate the unfavorable impression which the words made upon the jury as against the plaintiffs. S. v. Dick, supra. We also refer to these cases: S. v. Cook, 162 N.C. 588; Park v. Exum, 156 N.C. 228. We said very recently in Starr v. Oil Co., 165 N.C. 587: "Courts should be very careful to safeguard the rights of litigants and to be as nearly sure as possible that each party shall stand before the jury on equal terms with his adversary, and not be hampered, in the prosecution or defense of his cause, by extraneous considerations which militate against a fair hearing." And again in Hensley v. Furniture Co., 164 N.C. at p. 152: "It is the highest prerogative of the judge, in any court, and his bounden duty as well, to see that the rights of parties before the law are not prejudiced or impaired by irrelevant or foreign matters of any kind, and for this purpose he is endowed with plenary authority. But in this case the learned judge, intending doubtless to enforce what appeared to him to be the legal rights of the defendant, went too far." No extraneous and irrelevant consideration should be permitted to bias the minds of the jury in finding the truth as to the matter submitted to them. Ray v.Patterson, 165 N.C. 512. In this case it was the tone of the judge which was calculated to impress the jury with the idea that, in the opinion of the court, the defendant (Billy Perry) was entitled to something, and that he did not intend "that he should have nothing for his sweat." While the judge referred to the services rendered, they were so intimately interwoven with the other branch of the case as to the validity of the deed, not so much in respect to the decription [description] of the land, but with regard to the question of fraud and undue influence, and in (129) that connection, having an especial bearing upon the consideration of the deed which was based on the services alleged to have been rendered, as to seriously handicap the plaintiffs in presenting that question to the *Page 166 
jury, the idea, at last, being that he should have either the land or the money for his services. The judge should simply have ruled upon the motion for a nonsuit, without any discussion as to the rights of the defendant in the premises; but his remarks, while innocently made, tended to prejudice the plaintiffs in presenting their case to the jury, although there may not have been any direct intimation of opinion against them. While perhaps a commendable plea for justice, it was not altogether harmless to the plaintiffs. We look at the effect the remarks will probably produce, and discard the motive, however good, or even righteous, it may be.
There is another question in the case: The plaintiffs have shown no right to bring this suit. They have no cause of action. The real estate did not vest in them, unless there is a provision in the will to that effect, which is not yet shown. This Court held in Floyd v. Herring, 64 N.C. 409, following Ferebee v. Proctor, 19 N.C. 439, that "A personal representative has no control of the freehold estate of the deceased, unless it is vested in him by a will, or where there is a deficiency of personal assets and he obtains a license to sell real estate for the payment of debts. The control derived from a will may be either a naked power of sale or a power coupled with an interest. The heir of the testator is not divested of the estate which the law casts upon him, by any power or trust, until it is executed." See, also, Womble v. George, 64 N.C. 759;Fike v. Green, ibid., 665; Beam v. Jennings, 89 N.C. 451; Holton v.Jones, 133 N.C. at p. 401; Munds v. Cassidy, 98 N.C. 558; Perkins v.Presnell, 100 N.C. 220; Gay v. Grant, 101 N.C. at p. 219.
It is admitted that Mr. Davis's estate is solvent, he having had valuable property not encumbered by any debt. This being so, the executors cannot even sell to pay debts, for there are none. We do not know what disposition is made of the estate in the will, and unless they have acquired a right under it to bring this action, they are without any standing in the court. But counsel for both parties requested us not to dismiss the suit on that account, for they wished to try it on its merits, and as in one aspect of the case the executors may become proper parties, we have concluded, as the will is not before us, merely to grant a new trial for the reason above stated, so that the heirs or devisees, as the case may require, can come in and make themselves parties, but as plaintiffs only, as they cannot be brought in against their will, for the purpose of permitting the plaintiffs to attack the deed through them. Their action must be free, as they may elect, if they so desire, to abide by their (130) ancestor's deed, whether it was purely voluntary or given as a reward or compensation for services rendered. The rule which we have just mentioned is well expressed in Beam v. Jennings, 89 N.C. 451. In that case, Justice Ashe, with his usual clearness and vigor of style, *Page 167 
has stated the final conclusion in this Court upon the question whether, when a power of sale is conferred in a will, the land descends to the heirs or vests in the devisees until the power is fully executed. He remarks that, "On this question there is, in the decisions of the courts and among the text-writers, considerable diversity of opinion. Some hold, with whom is Mr. Hargrave, in his not on Coke Litt., 113, that whether the devise be to the executors to sell the land, or that the executors shall sell, or that the land be sold by the executors, a fee simple will be vested in the executors; but in Sugden on Powers, 133, and Williams on Executors, 579, it is laid down that until a sale by the executors, where a power of sale of land is given by the will, the land descends in the interim to the heirs at law." He then approves what is said by Chief Justice Ruffin in Ferebee v.Proctor, supra, that "Nothing can defeat the heirs but a valid disposition to another. Whatever is not given away to some person must descend. The heir takes, not by the bounty of the testator, but by the force of the law, even against the express declaration of the testator to the contrary. If the will does not devise the land, but creates a power to sell it, then upon the execution of the power the purchaser is in under the will, as if his name had been inserted in it as devisee. But in the meantime the land descends, and the estate is in the heir. The power is not the estate, but only an authority over it and a legal capacity to convey it. This, we think, settles the question." We have restated the rule so that there may be no misapprehension, in the further progress of the case, as to what kind of interest the executors must have acquired under the will in order to divest the estate of the heirs or devisees.
It may be advisable that we should direct attention to the statute which authorizes the personal representative of a decedent to sell his land for the payment of his debts, where the personal property is insufficient for that purpose. Revisal, section 69, provides for undevised real estate to be sold first, and section 70 for the sale of such real property as has been conveyed by an heir or devisee within two years from the grant of letters, which conveyances are declared void as to creditors and the personal representative, except those made to bona fide purchasers for value and without notice, but which are declared valid if made after the two years. Section 71 provides for the sale by the personal representative or his successor in office, as the case may require, of such land as has been conveyed to him for the benefit of the estate he represents, in the manner and upon the terms prescribed in the statute. Section 72 provides that real estate subject to sale under the statute shall include all (131) the deceased has conveyed in fraud of his creditors, all rights of entry and of action, and all other rights and interests in lands, tenements, or hereditaments which he may devise, or by law would descend to his heirs, the right of bona fide purchasers for value and without notice being protected by a proviso. *Page 168 
The above synopsis of the statute shows that the executor's right to sue for the purpose of setting aside his testator's deed for fraud, undue influence, or to attack it for lack of a sufficient description of the land, does not exist, except under special circumstances, when the right, for instance, is derived from the will, or it is necessary to do so to provide a fund for the payment of the decedent's debts.
A new trial is, therefore, awarded, with directions that, if the heirs or devisees, as the case may be, refuse to come in, the action be dismissed, unless, by the will, it appears that plaintiffs have acquired the right to assail the conveyance, as trustees or otherwise, in accordance with the rule laid down in the cases cited, the executors, merely as such, having no interest in the land of their testator.
New trial
CLARK, C. J., did not sit.
Cited: Alston v. Savage, 173 N.C. 215 (1c); S. v. Kline, 190 N.C. 180
(2c); S. v. Allen, 190 N.C. 499 (2c); Barbee v. Cannady, 191 N.C. 532
(3c); S. v. Mitchell, 193 N.C. 798 (2c); Cogdill v. Hardwood Co.,194 N.C. 747 (2c); S. v. Griggs, 197 N.C. 353 (2c); Hoke v. Trust Co.,207 N.C. 607 (3c); S. v. Rhinehart, 209 N.C. 153 (2c); Smithv. Hosiery Mill, 212 N.C. 662 (2c); Linker v. Linker, 213 N.C. 353
(3c); Jones v. Warren, 213 N.C. 735 (3c); Carruthers v. R. R., 215 N.C. 678
(2c); Johnston County v. Stewart, 217 N.C. 336 (1d); Thompson v. Umberger,221 N.C. 180 (1d); King v. Lewis, 221 N.C. 319 (3c); S. v. Isaac,225 N.C. 313 (2c); James v. James, 226 N.C. 403 (2c); S. v. Benton,226 N.C. 749 (2c); Pack v. Newman, 232 N.C. 401 (3c); Holt v. Holt,232 N.C. 502 (3c); S. v. Simpson, 233 N.C. 442 (2c).