J. R. MEDLIN v. COUNTY BOARD OF EDUCATION ET ALS.

(Filed 18 November, 1914.)

1. Schools, Separate—White and Colored Races—Statutes—Parent—Party
   in Interest—Evidence—Negro Blood—General Reputation—Hearsay.

   Children having any admixture of colored blood are by statute (Revisal,
   sec. 4086) forbidden entrance into the public schools for white chil-
   dren; and where a witness has testified as to the general reputation of
   the grandmother of the child, whose parent is seeking to enter him in a
   school for white children, that she was of mixed blood, but on cross-
   examination that she had heard such reputation had sprung up through
   jealousy of two or three white men in the neighborhood in the last few
   years, the latter is admissible as to the general reputation. Where the
   parentage of an ancestor of the child is relevant, testimony of general
   reputation of such parentage should be elicited, and a question, "Who
   was said to be her mother?" is held incompetent, in this case, as hearsay.

2. Schools, Separate—White and Colored Races—Negro Blood—Statutes—
   Parent and Child—Party in Interest—Declarations of Parent—Impeach-
   ing Evidence.

   Where the entrance of a child into a white public school is denied on
   the ground that it had an admixture of colored blood in its veins (Re-
   visal, sec. 4086), and the father of the child brings suit against the county
   board of education to compel its admission to such school, the father is
   but a nominal party, the party in interest being the child, and testimony
   of other witnesses of his declarations to them that he had married a
   negress can only be received as hearsay evidence in impeachment of his
   contradictory testimony, given by him as a witness, and not as substan-
   tive evidence. In this case, if it were erroneous on the trial for the judge
   to confine the admissibility of the evidence of this character to the pur-
   poses of impeachment, the distinction is too slight to be the ground for
   a new trial. Supreme Court Rule 27, 164 N. C., 548. The tendency of
   the court and of the times not to afford the appellant a new trial unless
   prejudicial error has been committed by the trial court, discussed by
   CLARK, C. J.

WALKER, J., dissenting.

APPEAL by defendants from *Allen, J.,* at June Term, 1914, of WAKE.

W. B. Snow and Armistead Jones & Son for plaintiff.
Percy J. Olive and H. E. Norris for defendants.

CLARK, C. J. This is an action against the county board of education
of Wake and the school committee of District No. 2 (white) of House's
Creek Township. The plaintiff alleges that his children belong to the
white race and are entitled to attend said school, but have been wrong-
fully and unlawfully debarred by defendants from attending the same on
the false allegation that they are of mixed blood, and asks a mandamus
to compel the defendants to admit his children to the said school for

whites. The defendants answer, admitting that plaintiff's children have been debarred, and aver that they are of mixed blood and therefore not entitled to attend.

It is admitted in the answer that the plaintiff, who is the father of the children, is of the white race. It is also admitted that Nan Powers was the mother of Mrs. J. R. Medlin and the grandmother of plaintiff's children. It was contended by plaintiff that John Powers and Lucy Powers, who are admitted to be of the white race, were the parents of Nan Powers, but this was denied by the defendants.

Revisal, 4086, forbids the admission of children to the white schools if there is any admixture of colored blood. *Johnson v. Board of Education,* 166 N. C., 468. The jury found that the children of the plaintiff were of unmixed white blood and entitled to attend the white school.

Exceptions 1 and 2 not being brought forward in defendants' brief, are abandoned. Rule 34.

Elma Maynard testified, on cross-examination in respect to Annie Powers, that the general reputation was that she was of mixed blood. The witness was then asked "If that general reputation has not sprung up through envy and jealousy of two or three men in that neighborhood in the last few years?" To which she replied: "I have heard so. I went to school with some of Mr. Medlin's children. It is generally reputed that two or three men started the rumor that Medlin's children were mixed blooded." This was a matter in the discretion of the court. It showed by the witness's testimony that there was no general reputation as to Nan Powers being of mixed blood; that what the witness meant was that there was a widely spread report which was not believed, because it was of general repute that it was a trumped-up charge.

Exceptions 4, 5, 7, 8, 18, 20, 23, and 26 seem to present substantially the same question, which is exemplified by the question, "Who was said to be her mother?" Here it is not the general reputation that is asked for, but merely hearsay. To make such questions competent, the witness should have been asked, first, if she knew the general reputation. This defect applies to all these questions. The defendant did not offer to show general reputation in the family.

Exceptions 9 and 10 are those most strenuously contested. Thad Ivey, who was a witness for the defendants, testified that plaintiff Medlin had said to him: "I married a nigger"; and Hardie Bagwell, also witness for defendants, testified that Medlin said in his presence that he "knew his wife was one-fourth nigger."

J. R. Medlin denied having made such statements, and testified that his wife was the daughter of Annie Powers, who was white, and that he had never known that she was reported to be of mixed blood; that Annie Powers was the daughter of John Powers and Lucy Powers, who are admitted on this trial to be of the white race.

There was much conflicting evidence, but the jury found that the evidence showed that the children were of purely white blood.

Exceptions 9 and 10 are because the judge stated that the evidence of Bagwell and Ivey as to Medlin's statement was "impeaching evidence. The parties involved here are the children. It is only what we call impeaching evidence. It only affects Mr. Medlin's testimony as a witness, but it is not what we call substantive evidence as to the real color of the children. He denies having said that, and it is only a question affecting his testimony, that does not go to the jury in respect to the color of the children." Had this evidence of contradictory statements been as to any other witness than Medlin, unquestionably such contradictory statements would have been impeaching and not substantive evidence. As the judge stated, it could not affect the color of the children. It was not evidence as to their color, but hearsay impeaching the truth of his statement on the trial. Evidence of contradictory statements are not substantive evidence, but merely impeaching testimony, unless it is an admission by a party in interest. The contradictory statement is hearsay, and therefore incompetent except to impeach the credibility of the testimony of the witness, except when the statement is a declaration against interest. Here, while Medlin was the nominal plaintiff, he was not possessed of such interest as would have made his admission against the interest of the children receivable as such. 1 Greenleaf Ev., sec. 176. If he had signed a statement that the children were not white, it would not have been competent in an action brought directly by them, unless he had gone on the stand and testified to the contrary, and then it would have been competent only to impeach his credibility. The judge ruled correctly. Besides, if it had been otherwise the jury could not have been prejudicially affected by the distinction, which they could not be expected to comprehend, between impeaching evidence by reason of a contradictory statement which lessens the weight of witness's testimony and calling such contradictory statement substantive evidence. The distinction between the two is not easily appreciated by a jury. Formerly new trials were given by reason of the distinction. But the Court, appreciating the fact that new trials should not be given on such slight distinction, in Rule 27, 164 N. C., 548, prescribed: "When testimony is admitted, not as substantive evidence, but in corroboration or contradiction, and that fact is stated by the court when it is admitted, it will not be ground for exception that the judge fails in his charge to again instruct the jury especially upon the nature of such evidence, unless his attention is called to the matter by a prayer for instruction; nor will it be ground of exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks at the time of admission that its purpose shall be restricted."

167—16

The tendency of the courts and of the times is that new trials shall not be granted unless it can be seen that the error, if one is committed, materially contributed to the result of the trial. This is hardly possible, when the error alleged is that evidence was substantive and not impeaching only, when the contradictory statement is made by a nominal plaintiff who is suing in behalf of the beneficial plaintiffs, whose rights he could not prejudice by any admission out of court, though such statement by him might well be calculated, if believed by the jury, to disparage the weight of his testimony at the trial.

The other exceptions do not require discussion. They were evidently taken out of abundant caution in a hotly contested case. The question at issue is almost entirely one of fact. It is one in which a jury would be naturally deeply interested and in which the jurors have the great advantage over any other mode of trial in that, knowing the witnesses, they can weigh the credit to be given to their testimony.

The burden was upon the plaintiff to make out his case by the preponderance of the testimony, and when a jury of twelve white men have determined the issue, as they have done in this case, in a matter of this kind, there can be little doubt of the correctness of their conclusion.

No error.

WALKER, J., dissenting: It is always with regret that I have to differ with my brethren of the majority, and I never do so unless I am convinced otherwise by reasons which my own logic does not enable me to overcome, and never express that difference in the form of a separate opinion unless the case is of the greatest importance or the principles involved are of the gravest moment in the administration of justice. I so regard this case, and the doctrines of law which govern it. The Legislature had positively and unmistakably forbidden that a child having any negro blood in its veins should be admitted to a public school for white children, adequate and equal facilities being provided by law for the education of both races in separate schools (*Johnson v. Board of Education*, 166 N. C., 468), and this being so, and such having been ordained as the public policy of the State by the highest lawmaking body, for reasons which are obvious, it is our bounden duty to see that the law is not violated, either directly or indirectly. It follows that where the right of any child to be admitted to a school for white children is brought into controversy, the right being disputed upon the ground that he has inherited negro blood in however small a degree or quantity, the question should be tried and decided strictly according to established rules of law. My fixed opinion that this case has not been so tried is my reason, and an all-sufficient one, for this dissent. Whatever may be said of the others, this exception of the defendant is certainly well taken. The action was

brought by J. R. Medlin against the defendants. He is the only plaintiff, and brings the suit in his own name, alleging his individual and personal interest therein as the natural guardian of his children. They are not parties. He is attempting solely to enforce his alleged paternal right to have his children admitted to the school. He is, therefore, not only a party in interest, but the only party in interest on the side of the plaintiff.

The defendants introduced as a witness Thad Ivey, who testified that plaintiff J. R. Medlin said to him, in a conversation had while he was riding with witness in his buggy, he being a mail carrier: " 'Well, Ivey, what are we going to do about the school matter?' And I asked what was the matter with the school business, and he said: 'They won't let us send to school'; and he said to me, 'I married a negro,' and it so shocked me there was very little else said, if anything at all. I drove on and he went his way." The court ruled, without even any objection by plaintiff to the testimony, so far as the record shows, that it could be used only as evidence tending to impeach Mr. Medlin as a witness, and not as substantive proof of the children's color, and he would not allow it to be considered by the jury to prove that fact. The defendant offered the evidence generally, both as impeaching and as substantive evidence. His Honor fell into this error doubtless because, from his remark while ruling upon the question, he evidently thought the children were the plaintiffs, and their father was not the plaintiff; but he was mistaken in this assumption.

It is hardly necessary to cite authority for the position that a declaration against the interest of a party is always competent as both impeaching and substantive evidence, and is evidence of the strongest and weightiest kind. A man is not apt to swear to his own hurt. Plaintiff, at the time of his remark to the witness Ivey, had a controversy with the school board, it seems, and spoke advisedly and with knowledge that his statement might affect his interests. That such declarations are competent would seem to be beyond any doubt. *McDonald v. Carson,* 95 N. C., 377; *Locklayer v. Locklayer,* 139 Ala., 354, where the declarant had said he was of negro blood; and even in proceedings to caveat a will, where there are strictly no parties, such declarations by any of those who have been brought in have been held admissible by this Court. *Enloe v. Sherrill,* 28 N. C., 212, where, at p. 215, *Judge Nash* says: "And when the declarations of any party to the issue are admitted as evidence, it is because of the rule that the declarations of any one against his interest is legal testimony as against him. It has therefore been ruled in this State that in an issue of *devisavit vel non,* when the parties are regularly constituted, their declarations are evidence against them," citing *McCrainey v. Clark,* 6 N. C., 317. In *McDonald v. Carson, supra,* Chief Justice *Smith* dismisses a similar point with scant consideration, in view

of the well settled rule of evidence. He says, briefly: "The last imputed oversight is in regard to a conversation had between the plaintiff and the defendant Wadsworth, of which it is enough to say that any and all declarations, pertinent to the subject-matter and bearing upon the issue, coming from the defendants, or any of them, are competent, at least against the persons making them, and may be against all, when their interests are joint and they are engaged in a common enterprise. This objection has not been pressed in the argument, and we dismiss it without further comment."

Nan Powers was the grandmother of the children, the mother of Medlin's wife. Elma Maynard had testified that the general reputation was that Nan Powers was of mixed blood, meaning that there was an admixture of negro blood, and on redirect examination was allowed to state, over defendant's objection, that she had heard that the reputation to which she had referred had "sprung up from envy and jealousy of two or three men in the neighborhood." This was clearly incompetent, as what she had last heard came from an entirely different source, and it was not the subject of proof by reputation. If she had said, that at the same times she heard of the reputation as to Nan Powers being of mixed blood, she also heard, as a qualifying part thereof, that it was based on envy and jealousy, the case would have been different; but she did not say so.

His Honor also disparaged the defendant's testimony, of course unconsciously, when he said that he though "the law ought to be very carefully administered as to the mixed blood of a person born sixty-eight years ago," for that remark greatly impaired its force, and there was no real reason why the law should be more carefully administered in such a case than in any other. It was giving the court's view upon the weight of such testimony, and although not in so many words, the clear implication was that it was not entitled to much credit. The evidence in this case to show the presence of negro blood in the veins of these people was very strong, and almost convincing; but such an observation coming from the court might, and no doubt did, turn the scales against the defendants, and was within the prohibition of Revisal, sec. 535. *S. v. Dick,* 60 N. C., 440; *Withers v. Lane,* 144 N. C., 184; *Park v. Exum,* 156 N. C., 228; *S. v. Cook,* 162 N. C., 588; *Ray v. Patterson,* 165 N. C., 512, and *Speed v. Perry, ante,* 122.

Reputation and tradition are the methods of proof by which pedigree and kindred matters are established. They are considered by the law as reliable and trustworthy, and therefore have long been admitted as evidence. This kind of testimony is not weakened, but rather strengthened by age and the long continuance of the reputation. Any tradition which can survive the lapse of sixty-eight years is not to be discredited

on account of that fact, but our confidence in its truthfulness should be increased thereby, as it improves by age, and the long period of its existence and the continuity of the tradition but show its persistence. The length of time, therefore, was not the proper subject of unfavorable comment. No rule of law, that I am aware of, warranted the criticism.

The learned and impartial judge who presided at this trial was inadvertent to the effect of this remark at the time, as he would be the last one to sway a jury, in the least, by any personal expression of opinion upon the weight of the evidence. He is too just and exemplary for that, and that the comment was unguardedly made, I have not the least doubt. But we must look at its effect, and the motive is not to be considered. *Starr v. Oil Co.*, 165 N. C., 587; *S. v. Dick, supra; Withers v. Lane, supra.*

The exclusion of the evidence of Thomas Finch was error, as it was not necessary to prove, as a fact, that Nan Powers had any grandparents. In the course of nature, she must have been the grandchild of some one, and the court takes judicial notice of all such matters.

There are other assignments of error, but I need not consider them, as those I have mentioned are sufficient to overturn the verdict and judgment. Some of the defendant's most important evidence was either improperly excluded or the probative force to which it was naturally and legally entitled was greatly weakened; and, thus embarrassed, there was left to the defendant little chance to succeed. We are not inerrable, and these slips will sometimes accidentally occur, where we strive to do our best; but the harm is not neutralized by the noble purpose to do the right, however earnest it may be, and for this reason the law steps in and corrects the error, and it is but just that it should do so. It takes no chances on the probable harmlessness of the mistake, but acts upon the theory that such a handicap must needs be prejudicial.

The public schools of our State should be administered in strict accordance with the mandate of the law requiring separate schools for the two races. It is no injustice to either, but, in my judgment, a great help, and a necessary provision for both. If this verdict has gone wrong, the harm may be incalculable, and especially so if it has resulted from an erroneous application of the law. It is better, even if it be a true deliverance, that it should come after a trial which is clear of any departure from long established principles. My conviction, after much reflection upon and study of the questions raised, has led me irresistibly to the conclusion which I have stated, and my desire to see this important law, so necessary to the peace and happiness of both races, correctly and strictly enforced, compels me to this dissent.

The record shows, as I have stated, that J. R. Medlin is suing in his own behalf and not as next friend or in behalf of his children. He

alleges, and it is the only theory upon which he bases his claim to relief, that his own personal right has been violated, and he is, in no sense, a nominal plaintiff, either in fact or in law. His children are not parties to this record, and if they were and could assert any individual right therein, they would have to appear by their next friend. I cannot agree to the doctrine that because a jury has decided a case one way, it must be the correct one. That depends very much upon whether the law has been properly administered, and the defendant is entitled under the Constitution, and as of right, to a legal trial, and a verdict in accordance therewith. Nor do I agree that the testimony as to the declaration of Medlin "that his wife was a negro" is not competent substantively on other grounds than that he is the real plaintiff in this suit. It would be dangerous practice to found our decisions upon the possible correctness of a verdict. We do not decide the facts, but what is the law of the case. We stated in *Starr v. Oil Co., supra,* that the court should be careful to see that neither party is placed at any undue advantage before the jury by anything occurring during the trial, whether it proceeds from counsel, the court, or otherwise, and further said: "Courts should be very careful to safeguard the rights of litigants and to be as nearly sure as possible that each party shall stand before the jury on equal terms with his adversary, and not be hampered in the prosecution or defense of his cause by extraneous considerations, which militate against a fair hearing. . . . While frequently in the exercise of the authority conferred upon this Court we disregard technical errors, when we see that they do not affect the merits of the controversy, the error committed in this case is of too grave a nature to be put aside as merely technical," citing *Hensley v. Furniture Co.,* 164 N. C., 148, which is to the same general effect. I am of opinion that there should be a new trial.

HOKE, J., concurs in this dissenting opinion.