## STATE v. JOHN ISAAC.

(Filed 6 June, 1945.)

**1. Criminal Law § 53g: Trial § 33—**

In a criminal prosecution for murder, argument and contention of the State, given in the court's charge to the jury, that prisoner was armed with a shotgun when he inquired for deceased at her home shortly before the homicide, which was not only unsupported by the evidence, but was in direct conflict with the State's undisputed evidence on the very point, constitutes harmful error, even though not called to the attention of the court at the time.

**2. Same—**

The rule, that requires an objection at the time to an erroneous statement in the charge of the contention of the parties, does not apply on the trial of first degree murder, when such statement includes the assumption of sworn evidence against the prisoner, tending to show previous malice and vitally necessary upon the question of premeditation, where this evidence had been excluded or where no such evidence had been given.

DEVIN, J., dissenting.
SCHENCK and SEAWELL, JJ., concur in dissenting opinion.

APPEAL by defendant from *Armstrong, J.,* at November Term, 1944, of CATAWBA.

Criminal prosecution tried upon indictment charging the defendant with the murder of one Mrs. Floyd Sigmon.

Mrs. Floyd Sigmon and her husband, Russell Sigmon, lived about ten miles from the town of Conover, where they both worked in a furniture factory. The defendant, John Isaac, lived about a quarter of a mile from the home of the Sigmons. J. E. Sigmon, an uncle of Russell Sigmon, lived about halfway between the homes of Russell Sigmon and the defendant.

On the morning of 16 August, 1944, between 7:30 and 9:00 o'clock, the defendant and his sister's boy, Kenneth Hollar, went in defendant's car to the home of Russell Sigmon. Kenneth Hollar and Bobby Lee Poovey, 15 years of age, a son of Mrs. Russell Sigmon by a former marriage, worked most of the morning changing the tires on defendant's car. Mr. and Mrs. Russell Sigmon had gone to work before the defendant and Kenneth Hollar arrived. The defendant remained with the boys while they were changing the tires and left in his car about 11:30 a.m., according to the testimony of Bobby Lee Poovey. This witness further testified: "The next time I saw him was about 2:00; he came down the road to our house and wanted to know where my mother was and I told him I did not know; mother was not at home then. Isaac was walking and he did not have anything in his hand. He stayed there about five minutes. Our home is off the main road and he came down to the house. When I told him Mother was not there he left and went back up the road towards his home."

J. E. Sigmon, testifying for the State, said, in substance: The defendant kept his gun at his house and on 16 August, 1944, he talked with him but did not see him. That he was not well and was in his bedroom. The defendant came in the house and he heard him and talked to him and knew his voice. The time was between 2:00 and 4:00 o'clock in the afternoon. He said, "Where are you going, John?" and he said "I am going to watch for squirrels." He left and was next seen at the home of Russell Sigmon, about 6:00 o'clock that same afternoon, where' he shot and killed Mrs. Floyd Sigmon.

The defendant at the trial below interposed a plea of insanity caused by the excessive use of bromides and intoxicants.

Evidence for the defendant tended to show that he had been addicted to the use of whiskey and narcotics for many years. In 1943 he was a patient at Broad Oaks Sanatorium for about six months. In March, 1944, he had an automobile accident in which he sustained a broken neck. Since he left Broad Oaks Sanatorium, he has used "Stanback"

excessively, averaging six to eight packages and sometimes as many as fifteen packages a day.

Verdict: Guilty of murder in the first degree. Judgment: Death by asphyxiation.

Defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes and Moody for the State.*

*John W. Aiken and John C. Stroupe for defendant.*

DENNY, J. During the concluding argument on behalf of the State, the solicitor stated to the jury that the defendant went to the home of J. E. Sigmon about 2:00 p.m. on the day of the homicide, and got his shotgun and went from there to the home of the deceased and asked Bobby Lee Poovey where his mother was, and, at the time he made the inquiry, he had the shotgun with him. Whereupon, defendant's counsel objected to this argument and requested the court to direct the jury that this argument was not substantiated by the record, which would show that at the time defendant went to the home of the deceased and asked Bobby Lee Poovey where his mother was, the defendant did not have a shotgun. The court overruled defendant's objection, denied his request, and instructed the jury "that they should rely upon their own recollection of the testimony and not the solicitor's recollection or counsel for defendant's recollection," to all of which the defendant in apt time excepted. Thereafter, his Honor, in his charge to the jury, in reviewing the testimony, gave as a contention of the State "That after the defendant left there that he went back towards his own home and later went over to Mr. J. E. Sigmon's where he had been keeping his gun and the shells, and there talked to Mr. Sigmon and got his gun; that that was about 2:00 p.m. Then the State contends that the defendant from there went to Mr. Russell Sigmon's at about 2:30 and asked Bobby Lee where his mother was or if she was working. Then the State contends that he had planned this killing; that he went and got the shotgun and ammunition from Mr. Sigmon's and asked Bobby Lee where his mother was, and when he found she was not there, the State contends he went some place where the toilet was; . . . and waited there in the afternoon until Mrs. Sigmon went there to the toilet about 6:00 o'clock."

The defendant likewise excepted to the foregoing part of the charge. These exceptions must be sustained.

The argument of the solicitor and the contention of the State given in the charge to the jury, to the effect that the defendant was armed with a shotgun when he went to the home of Russell Sigmon about 2:00 p.m.,

on 16 August, 1944, and inquired of Bobby Lee Poovey where his mother was, are not supported by the evidence, but, on the contrary, are in direct conflict with the State's undisputed evidence on this point.

The argument of the solicitor and the contentions of the State, to which the defendant objected, had a direct bearing on the question of premeditation and deliberation, and were prejudicial.

The State contends that since counsel for the defendant failed to call this matter to the attention of the court at the time, he has waived his right to object. Ordinarily this is true. *S. v. Britt, post,* 364. But we think the facts here constitute an exception to the general rule and come within the principle laid down in *S. v. Love,* 187 N. C., 32, 121 S. E., 20, in which case the holding is succinctly stated in the syllabus thereof, as follows: "The rule that requires an objection at the time to an erroneous statement in the charge of the contention of the parties, does not apply on the trial of first degree murder, when such statement includes the assumption of sworn evidence against the prisoner upon the trial, that had been excluded, tending to show previous malice of the prisoner, vitally necessary upon the question of his premeditation." Moreover, the defendant had already challenged the correctness of the evidence on which the contentions were based and requested the court to instruct the jury as to what the evidence did show. This should have been done. *Curlee v. Scales,* 223 N. C., 788, 28 S. E. (2d), 576. The court, however, overruled the objection and denied the request for instructions. It is equally as harmful to base an argument or a contention on a statement of facts unsupported by the evidence as it is to base them on incompetent evidence which has been withdrawn from the jury, and when such argument or contention is prejudicial, an exception thereto will be sustained. *Howell v. Harris,* 220 N. C., 198, 16 S. E. (2d), 829; *S. v. Wyont,* 218 N. C., 505, 11 S. E. (2d), 473; *Smith v. Hosiery Mill,* 212 N. C., 661, 194 S. E., 83. In the latter case, in considering contentions of the plaintiff based on excluded evidence, *Stacy, C. J.,* speaking for the Court, said: "The testimony undoubtedly found lodgement in the court's mind, and to have called the matter to his attention, as a correctible inadvertence, would only have served to emphasize the error. *Bank v. McArthur,* 168 N. C., 48, 84 S. E., 39; *Medlin v. Board of Education,* 167 N. C., 239, 83 S. E., 483; *Speed v. Perry, ibid.,* 122, 83 S. E., 176; *S. v. Whaley,* 191 N. C., 387, 132 S. E., 6; *S. v. Cook,* 162 N. C., 586, 77 S. E., 759; *S. v. Dick,* 60 N. C., 440. Where the judge himself fails to disregard incompetent evidence, or to eradicate it from his own mind, it would seem to be asking rather much to require a higher standard of the jury. Its harmful effect is obvious. *Credit Corp. v. Boushall,* 193 N. C., 605, 137 S. E., 721; *Morton v. Water Co.,* 169 N. C., 468, 86 S. E., 294."

STATE *v.* ISAAC.

We deem it unnecessary to discuss the other exceptions, since they may not arise on a new trial.

New trial.

DEVIN, J., dissenting: Unquestionably the evidence was sufficient to warrant the verdict of guilty of murder in the first degree. It appeared from the testimony that several hours before the homicide the defendant secured his shotgun and shells, and after waiting some time for the deceased to return to her home from work, approached within a few feet of the outhouse where she had gone and deliberately shot her through the heart, saying "You have talked your last word." Then after reloading his gun and threatening a like fate to her husband, he left the scene, and later gave himself up. It was testified that he said afterwards he had no regrets and would do the same again, that "he had his reasons." The deceased was a woman 34 years of age and a wife and the mother of five children.

The evidence as to the circumstances of the homicide was uncontradicted. The only defense interposed was insanity. It was contended the excessive use of liquor and headache remedies had rendered defendant mentally irresponsible. All the testimony offered by him and the cross-examination of the State's witnesses were pointed to that plea. Of the twenty-seven exceptions noted during the trial, all but one were in that connection. It was on the plea of insanity the contest was waged. In their brief counsel for defendant frankly admit the charge of the court on questions of law was free from error. The record, I think, shows that the defendant has had a fair and impartial trial, before an able and painstaking judge and an intelligent jury. The result should not be nullified save for some matter of evidence or judicial instructions which seriously would challenge the integrity of the trial.

The only ground upon which the order for a new trial is based, as set out in the majority opinion, is the ruling of the trial judge in relation to the testimony of the witness Poovey and the remarks of counsel thereon. The circumstances in connection with defendant's exception on this point, which the opinion sustains, as shown by the record, were these:

The homicide occurred at 6 p.m. The witness Poovey, son of the deceased, testified that the defendant came to the home of deceased about 2 that afternoon and inquired for the boy's mother. In response to a question inferentially the witness puts the time at 2:30. Defendant was walking and did not have anything in his hand. Being told deceased was not at home defendant went back towards his home. J. E. Sigmon testified the defendant came to his house, which was situated between

defendant's home and the home of deceased, and secured his gun and shells about "2 or 3 or 4" o'clock in the afternoon.

During his argument to the jury the solicitor stated that the defendant went to the home of J. E. Sigmon about 2 p.m. on the day of the homicide and got his shotgun and went from there to the home of the deceased and asked Poovey where his mother was and at the time he made the inquiry he had the shotgun with him. Counsel for defendant objected and requested the court to direct the jury this argument was not substantiated by the record, which would show that at the time the defendant went to the home of deceased and inquired where she was he did not have a gun. The court told the jury they should rely upon their own recollection of the testimony and not the solicitor's recollection or that of counsel for defendant, and denied defendant's request. Apparently no further reference was made to the matter by the solicitor in his argument. However, in his charge to the jury, in recapitulating the evidence, the court stated that Poovey had testified "that the defendant came and asked where his mother was working; that he had nothing in his hand then, and that he went towards his home then, that the next time he saw him was about 6 p.m." Also in his charge the court instructed the jurors to be governed by their own recollection of the evidence, and if their recollection differed from that stated by the court to take their own recollection and not the court's, and "if counsel on either side in this case have stated some parts of the evidence and your recollection differs you take your own recollection and not counsel's."

The solicitor had the right to argue the evidence in the light most favorable to the State. There was evidence that defendant secured the gun at 2 p.m., and that he went to the home of deceased inquiring for her at 2:30. It was not unreasonable to argue that at that time he had secured the gun and had it available, notwithstanding Poovey had said "he did not have anything in his hand." The court's caution to the jury to be governed by their own recollection of the evidence, repeated in his charge, coupled with the court's quotation of Poovey's testimony "that he had nothing in his hand," would seem to rob this incident of any suggestion of prejudice.

In *S. v. Beal,* 199 N. C., 278 (304), 154 S. E., 604, it was said: "The general rule is that what constitutes legitimate argument in a given case is to be left largely to the sound discretion of the trial court, which will not be reviewed on appeal unless the impropriety of counsel be gross and well calculated to prejudice the jury."

In the course of stating the contentions of the State, the court used this language: "The State contends . . . that after defendant left there he went back towards his own home and later went to J. E. Sigmon's where he had been keeping his gun and shells . . . and got his gun; that

that was about 2 p.m. Then the State contends the defendant from there went to Russell Sigmon's (home of deceased) at about 2:30 p.m. and asked Poovey where his mother was or if she was working. Then the State contends he had planned this killing; that he went and got the shotgun and ammunition from Mr. Sigmon's and asked Poovey where his mother was, and when he found she was not there, the State contends he went some place (near) where the toilet was . . . where Sheriff Pitts found the grass mashed down and the cigarette butts and matches . . . and waited there until Mrs. Sigmon went to the toilet about 6 o'clock."

I am unable to agree that the court's statement of the State's contention on this point was prejudicial or unfair. The defendant's alert and experienced counsel heard it all and sat by without objection. If they thought it prejudicial they should have called the court's attention to it at the time. Certainly the evidence showed that defendant secured his gun from J. E. Sigmon's home, and also that he went to the home of deceased looking for the deceased. The question which movement preceded the other should not be regarded as important in the face of the uncontradicted evidence that both movements actually occurred, and were followed in two or three hours by the deliberate shooting of the deceased for whom the defendant had been looking, with the gun he had thus secured. I do not think a jury of average intelligence who heard all the evidence could have been misled or their verdict influenced to the prejudice of the defendant.

It seems to me the record discloses a willful, deliberate and premeditated killing, unprovoked and without palliation. The only defense was insanity, of which there was substantial evidence. As to that, under a correct charge, the jury has determined the issue against the defendant. I think the judgment should be affirmed.

SCHENCK and SEAWELL, JJ., concur in this dissent.