DEVIN, J., dissenting.
SCHENCK and SEAWELL, JJ., concur in dissenting opinion. *Page 311 
Criminal prosecution tried upon indictment charging the defendant with the murder of one Mrs. Floyd Sigmon.
Mrs. Floyd Sigmon and her husband, Russell Sigmon, lived about ten miles from the town of Conover, where they both worked in a furniture factory. The defendant, John Isaac, lived about a quarter of a mile from the home of the Sigmons. J. E. Sigmon, an uncle of Russell Sigmon, lived about halfway between the homes of Russell Sigmon and the defendant.
On the morning of 16 August, 1944, between 7:30 and 9:00 o'clock, the defendant and his sister's boy, Kenneth Hollar, went in defendant's car to the home of Russell Sigmon. Kenneth Hollar and Bobby Lee Poovey, 15 years of age, a son of Mrs. Russell Sigmon by a former marriage, worked most of the morning changing the tires on defendant's car. Mr. and Mrs. Russell Sigmon had gone to work before the defendant and Kenneth Hollar arrived. The defendant remained with the boys while they were changing the tires and left in his car about 11:30 a.m., according to the testimony of Bobby Lee Poovey. This witness further testified: "The next time I saw him was about 2:00; he came down the road to our house and wanted to know where my mother was and I told him I did not know; mother was not at home then. Isaac was walking and he did not have anything in his hand. He stayed there about five minutes. Our home is off the main road and he came down to the house. When I told him Mother was not there he left and went back up the road towards his home."
J. E. Sigmon, testifying for the State, said, in substance: The defendant kept his gun at his house and on 16 August, 1944, he talked with him but did not see him. That he was not well and was in his bedroom. The defendant came in the house and he heard him and talked to him and knew his voice. The time was between 2:00 and 4:00 o'clock in the afternoon. He said, "Where are you going, John?" and he said "I am going to watch for squirrels." He left and was next seen at the home of Russell Sigmon, about 6:00 o'clock that same afternoon, where he shot and killed Mrs. Floyd Sigmon.
The defendant at the trial below interposed a plea of insanity caused by the excessive use of bromides and intoxicants.
Evidence for the defendant tended to show that he had been addicted to the use of whiskey and narcotics for many years. In 1943 he was a patient at Broad Oaks Sanatorium for about six months. In March, 1944, he had an automobile accident in which he sustained a broken neck. Since he left Broad Oaks Sanatorium, he has used "Stanback" *Page 312 
excessively, averaging six to eight packages and sometimes as many as fifteen packages a day.
Verdict: Guilty of murder in the first degree. Judgment: Death by asphyxiation.
Defendant appeals, assigning errors.
During the concluding argument on behalf of the State, the solicitor stated to the jury that the defendant went to the home of J. E. Sigmon about 2:00 p.m. on the day of the homicide, and got his shotgun and went from there to the home of the deceased and asked Bobby Lee Poovey where his mother was, and, at the time he made the inquiry, he had the shotgun with him. Whereupon, defendant's counsel objected to this argument and requested the court to direct the jury that this argument was not substantiated by the record, which would show that at the time defendant went to the home of the deceased and asked Bobby Lee Poovey where his mother was, the defendant did not have a shotgun. The court overruled defendant's objection, denied his request, and instructed the jury "that they should rely upon their own recollection of the testimony and not the solicitor's recollection or counsel for defendant's recollection," to all of which the defendant in apt time excepted. Thereafter, his Honor, in his charge to the jury, in reviewing the testimony, gave as a contention of the State "That after the defendant left there that he went back towards his own home and later went over to Mr. J. E. Sigmon's where he had been keeping his gun and the shells, and there talked to Mr. Sigmon and got his gun; that that was about 2:00 p.m. Then the State contends that the defendant from there went to Mr. Russell Sigmon's at about 2:30 and asked Bobby Lee where his mother was or if she was working. Then the State contends that he had planned this killing; that he went and got the shotgun and ammunition from Mr. Sigmon's and asked Bobby Lee where his mother was, and when he found she was not there, the State contends he went some place where the toilet was; . . . and waited there in the afternoon until Mrs. Sigmon went there to the toilet about 6:00 o'clock."
The defendant likewise excepted to the foregoing part of the charge. These exceptions must be sustained.
The argument of the solicitor and the contention of the State given in the charge to the jury, to the effect that the defendant was armed with a shotgun when he went to the home of Russell Sigmon about 2:00 p.m., *Page 313 
on 16 August, 1944, and inquired of Bobby Lee Poovey where his mother was, are not supported by the evidence, but, on the contrary, are in direct conflict with the State's undisputed evidence on this point.
The argument of the solicitor and the contentions of the State, to which the defendant objected, had a direct bearing on the question of premeditation and deliberation, and were prejudicial.
The State contends that since counsel for the defendant failed to call this matter to the attention of the court at the time, he has waived his right to object. Ordinarily this is true. S. v. Britt, post, 364. But we think the facts here constitute an exception to the general rule and come within the principle laid down in S. v. Love, 187 N.C. 32, 121 S.E. 20, in which case the holding is succinctly stated in the syllabus thereof, as follows: "The rule that requires an objection at the time to an erroneous statement in the charge of the contention of the parties, does not apply on the trial of first degree murder, when such statement includes the assumption of sworn evidence against the prisoner upon the trial, that had been excluded, tending to show previous malice of the prisoner, vitally necessary upon the question of his premeditation." Moreover, the defendant had already challenged the correctness of the evidence on which the contentions were based and requested the court to instruct the jury as to what the evidence did show. This should have been done. Curlee v. Scales,223 N.C. 788, 28 S.E.2d 576. The court, however, overruled the objection and denied the request for instructions. It is equally as harmful to base an argument or a contention on a statement of facts unsupported by the evidence as it is to base them on incompetent evidence which has been withdrawn from the jury, and when such argument or contention is prejudicial, an exception thereto will be sustained. Howell v. Harris,220 N.C. 198, 16 S.E.2d 829; S. v. Wyont, 218 N.C. 505,11 S.E.2d 473; Smith v. Hosiery Mill, 212 N.C. 661, 194 S.E. 83. In the latter case, in considering contentions of the plaintiff based on excluded evidence, Stacy, C. J., speaking for the Court, said: "The testimony undoubtedly found lodgement in the court's mind, and to have called the matter to his attention, as a correctible inadvertence, would only have served to emphasize the error. Bank v.McArthur, 168 N.C. 48, 84 S.E. 39; Medlin v. Board of Education,167 N.C. 239, 83 S.E. 483; Speed v. Perry, ibid., 122, 83 S.E. 176;S. v. Whaley, 191 N.C. 387, 132 S.E. 6; S. v. Cook, 162 N.C. 586,77 S.E. 759; S. v. Dick, 60 N.C. 440. Where the judge himself fails to disregard incompetent evidence, or to eradicate it from his own mind, it would seem to be asking rather much to require a higher standard of the jury. Its harmful effect is obvious. Credit Corp. v.Boushall, 193 N.C. 605, 137 S.E. 721; Morton v. Water Co.,169 N.C. 468, 86 S.E. 294." *Page 314 
We deem it unnecessary to discuss the other exceptions, since they may not arise on a new trial.
New trial.