Ruffin, Chief Justice,
 

 after stating the facts as above, proceeded as follows: — The premises descended to the testator’s two children, unless they are devised in the will to Sawyer, the executor, or to the wife and children. We think with his Honor, that no estate is given to the executor, but only a power to sell, coupled with a trust for the payment of the debts and legacies. The words are, “ I leave my lands, not given away, to be sold.” It is not said to whom they are left; nor in that part of the will, by whom they are to be sold. Lord Coke says, that “ when a man deviseth his tenements to be sold by his executors, it is all one as if he had devised them to his executors to be sold; and the reason is, because he
 
 deviseth the tenements,
 
 whereby he breaks the descent.” Co. Litt. 236. This, however, has been questioned by high authority. In Lord Nottingham’s note on this passage, its correctness is denied, and it is said that no interest passes to the executor. Sir Edward Sugden, thinks that
 
 a devise of land to be sold by executors,
 
 without other words giving them the estate, invests them only with a power, not an interest. Sug. Pow. 102 — 108. It is not necessary, in this case, that the Court should adopt the one or the other of those opposite opinions. The existence of such a difference of opinion, renders the text at least doubtful. If it be correct, it must be so upon the ground of favour-ing the intention, where there were several executors, by preserving for the largest period, the authority in some person to sell; which induced the Courts to lay hold of
 
 *444
 
 the expression “ devise the land to be sold by my execu* tors,” which probably meant nothing more than “ direct the land to be sold by them,” as a devise of the land
 
 to
 
 the executors. This, perhaps, the particular term
 
 devise
 
 authorized, as its technical sense is a
 
 gift
 
 of land by will. But there is not equal reason for receiving in that sense the word “ leave” which is here used; and especially as it is here used. It may mean as well
 
 “
 
 I direct or order,” my land to be sold, as that “ I give” it to be sold. We think the former was the testator’s meaning. In the first place, the will is silent in this clause, as to the person to whom the land is devised, if “leave” means “devise.” It is true, we afterwards see that an executor is appointed, and that he is expressly directed in the clause of appointment to make sale of the land. But it does not follow that, ^¡ie first provision W'as meant to be a devise of the land to 1 him. If, indeed, a testator directs his land to be sold for the payment of his debts, or for any other purpose which would naturally bring the proceeds into the hands of the executor for distribution, the power to make the sale is in the executor by implication, although he be not named in the will, as the person to make it. Sug. Pow. 160.
 
 Davoux
 
 v.
 
 Fanning, 2
 
 Johns. Chan. Ca.
 
 252.
 
 That arises from necessity, to prevent a clear provision of the wjjj from becoming ineffectual. The power to sell is . ° r unquestionably declared, and was intended to be executed ^ some person ; and the sole inquiry is, by whom ? The answer is obvious; by the person who is to administer the fund when raised. But the purposes of the will do not at all require an estate in the executor; and therefore, unless he be mentioned as the person to whom the gift is made, n0 estate to him ought to be implied. The rule on the contrary, is to favour the heir, and to require plain words, a necessary intendment, to disinherit him. Here a power answers every end the testator had in view, as fully as an interest in the executor; and therefore, nothing more than a power ought to be presumed. In the addi* tional clause too, by which the executor is appointed, such a Power’s expressly given to him; which is inconsistent with a previous devise of the estate to the same person.
 
 *445
 
 The sentence itself, in the original will, in its very construction, shows that “ leave” does not mean “ give,” since the lands
 
 “
 
 left” to be sold, are those “ not given away.” That is saying, that the land specifically devised, was
 
 “given away;”
 
 and by way of contradistinction, that the others were
 
 not “
 
 given” to any person ; but were to be i « i.i • sold and the
 
 money
 
 given.
 

 
 *444
 
 A direction to sell land for the payment of foíañy1' other pur-naturally11 brings the lntotite* hands of tor, vests by imph-cation a power of sale mhim.
 

 A devise
 
 to
 
 the execu-purpose* a sale, is presumed without a implica-7 cause1"3" giving him
 
 *445
 
 a power of afc^ame3 result, and is more beneficial to the heir
 

 In our opinion, therefore, no estate in the premises passed to Sawyer by the will, but only a power to sell them.
 

 We likewise think they were not devised to the wife and children as a part of “ the residue of my estate to be divided between” them. Every devise of land, even by a residuary clause, is a specific devise. It is obvious, that the testator did not intend this residue to embrace any lands specifically. It is given to the same persons to whom the slaves are specifically bequeathed; and it is given expressly
 
 “
 
 after the payment of debts,” not merely as a charge, but with a power, likewise expressly created, to the executor to sell. The testator was aware that it might be necessary to sell some part of his estate for the payment of his debts, and he directed this land to be sold. The question is, whether he meant to substitute it for that purpose in the room of his personal estate, and absolutely command the sale, or merely meant it as increase of the fund. We think the former was his intention. The executor was not to have the election to sell the land or the slaves. The direction to sell the land, when spoken to the executor, must be taken to be positive, that the land should be sold first, and at all events; otherwise the specific legacy of the slaves might be defeated by the disposition of the residue, although it was, in the testator’s contemplation, to pass through the hands of the executor as a residue, to the same persons who werq the donees oí the slaves. But in the next place, if the clause for the sale of the land, be not necessarily connected with the payment of debts, as one of the objects of the sale, and rendered imperative upon the executor by the specific dispositions of the other parts of the estate in favour of the same persons, made in other parts of the will,
 
 *446
 
 then that clause is to be read by itself. Thus read, and standing alone, it is a precise and absolute order, that all bis land, not before particularly devised, shall be sold at all events, and the proceeds divided.' Such directions are inconsistent with a devise of the lands as part of the residue; for that would be to give to the same persons, by one and the same instrument,
 
 both the
 
 proceeds of the lands, and the lands themselves.
 

 It is, indeed, not material to this case, whether the land descended to the testator’s children, or was devised to them and his wife. For, if the latter were true, in the event that has happened, the mother of the lessor of the plaintiff, upon the death of her mother, intestate, became entitled to precisely the same share she would take by descent from her father, upon his intestacy as to these lands, namely, an undivided half. The point would not, therefore, have been adverted to, if the respectable gentleman who presided in the Superior Court, had not declared himself of opinion, that the lessor of the plaintiff must claim under the will, or not at all. ' As we entertain a different opinion, it is deemed respectful to him to state the points and grounds of the difference.
 

 We concur with him, then, in thinking, that the premises were not devised to the executor, nor to the wife and children. But we do not concur in the opinion, that they did not descend to the children; but on the contrary, think that they did descend; for the very reason, that they were not devised, and therefore necessarily descended. Nothing can defeat the heir, but a valid disposition to another. Whatever is not given away to some person, must descend. The heir takes, not by the bounty of the testator, but by force of the law, even against the express declaration of the testator to the contrary. If the will does not devise the land, but creates a power to sell it, then, upon the execution of the power, the purchaser is in under the will, as if his name had been inserted in it as devisee. But, in the mean time, the land descends, and the estate is in the heir. The power is not the estate, but only an authority over it, and a legal capacity
 
 to -convey
 
 it. These are elementary maxims. But it is sup
 
 *447
 
 posed, that the testator has disposed of this land, by directing a sale of it absolutely, and a division of the proceeds, so as to turn it out and out, as it is called, into personalty; and that this defeated the descent. When sold, the estate of the heir will certainly be divested ; but such a provision in the will is only the creation of a power: it is a disposition of the proceeds of the land, but not a disposition of the land itself; and that consequently descends. The doctrine of conversion is purely equitable. The law knows nothing of it. A court of equity, by considering that as done, which ought to have been done, deals with land ordered to be sold, as if it were sold. But a court of law always looks upon land as land, and has regard only to the legal title, which is unaffected by any power, whether it be a naked one; or coupled with an interest, or a trust until the power be executed.
 

 Has the estate which descended to the heir, been divested ? It can have been divested by means only of the decree of the Court of Equity, or of the deed made by Thomas C. Ferebee, under the authority of that decree, or under the authority of his administration. We think, they are all insufficient.
 

 An administrator cannot sell land under a power given to the
 
 executor to
 
 do so. It is a personal trust, to be executed by the persons on whom it is conferred by the will. The statute 21 Hen. 8, enables a part of those persons, under certain circumstances, to perform the duty. But the power is not, under any circumstances, transferred to an administrator; nor is he vested in any case, with authority to convey his intestate’s land, but in the single one prescribed in our act of assembly of 1797,
 
 (Rev. c.
 
 478.) His deed therefore derives no efficacy from his office.
 

 Nor does it derive any from the decree of the Court of Equity. It is not intended here, to question the operation of the decree upon the interest of Mrs. Ferebee, merely upon the ground that she was not a party to the suit; nor to deny, that the case made in the pleadings was within the jurisdiction of the Court, or that it was a proper one for its interposition. Undoubtedly, it is the doctrine of
 
 *448
 
 the Court of Equity, that it will compel the execution of a power at the instance of those to derive an interest under it: that it will interpose to prevent injurious consequences from arising, even from the extinction of the power; and that a trust shall not, in any event, fail for the want of a trustee. But these ends are not attainable, in reference to a change of the legal title, merely by a decree, that the land shall be sold; nor by a decree that, when sold, it shall be conveyed by a particular person, unless that person actually convey, and unless, also, he hath the legal title, or a power to convey it, which is recognized so to be by the law. The court of equity does not act upon things, but upon persons. It does not adjudicate, that land in controversy legally belongs to one of the parties; but that it belongs to him equitably; and-thereupon it decrees, that the party in whom the legal title or power is, shall convey, so as to make the equitable owner, thereby, the legal owner. The decree does not therefore constitute a title at law; nor enter into it. The title passes by the deed, which the decree compels the party to the suit to execute. If the deed be made by a person who had not the estate, nor a power to convey, it will not pass the title at law, although made under the direction of a court of equity. The person claiming under it must resort to that court for the protection of the rights ascertained in the decree, or derived under it. When it is said, that a court of equity will not allow a trust to fail for the want of a trustee, it is not meant, that the court can appoint a trustee, who, by virtue of the appointment, gets the legal estate; but that the court will hold the legal owner, whoever he may be, to be a trustee, in respect merely of the use that may be made of the legal estate; will raise and distribute the fund according to the trust; and if necessary for the purposes of the trust, will decree and compel such owner to convey. In other words, the court of equity cannot by decree, make that a legal title, which a court of law says is not a legal title. In the case under consideration, the Court could have directed a good title, if the proper parties had been before it. According to some opinions, when executors renounce the probate of
 
 *449
 
 the will, they may yet execute a power to sell. Sug. Pow. 165. At all events, the conveyance of the executor and the heirs would have passed the title. But the deed of Ferebee, could, at most, pass only his estate as tenant by the courtesy. How far the Court of Equity might now go in decreeing proper conveyances, or whatever it might do to sustain the sale made under its direction, as against the lessor of the plaintiff claiming as the heir of his mother against the vendee of his father, who
 
 jure mariti
 
 was entitled to her share of the money raised by the sale, or claiming under his grandmother, who was a party to the suit, it is not for us, sitting where we are, to say. It is sufficient for the plaintiff here, that his lessor’s legal title has not yet been divested.
 

 This question has been treated as if the decree had directed Ferebee to convey. It is but justice to that Court, however, to remark, that it does not. No doubt, the Court did not intend so to direct. It is against the course of the Court to do so, until a sale has been reported and confirmed ; which does not appear ever to have been done. It would not have been confirmed, unless the Court ■could have directed a title that was good, or the purchaser had been willing to rely on the equitable one under the decree. The latter is the utmost the defendant can now insist on; and that is not a defence in this action.
 

 The observations upon conveyances made under the directions of the Court of Equity, will readily be seen to have no application to sales under execution from that Court, or for partition. In those cases, the deeds of the sheriff and clerk and master operate by virtue of the legal authority expressly conferred by statute.
 

 The statute of limitations does not bar the plaintiff. If actual seisin be here, as in England, necessary to the •consummation of the title by courtesy, yet we see no reason to doubt that Ferebee and wife had it. No possession adverse to them is stated. Consequently, they, as the owners, Were constructively in the actual possession. Upon such a possession, they could have maintained trespass. Now •actual seisin is the possession of land by the freeholder. But furthermore, no possession by the defendant, or those
 
 *450
 
 under whom he claims, prior to this suit, is stated in the case.
 

 The Court is therefore of opinion, that the judgment of the Superior Court is erroneous, and must be reversed; and that judgment, upon the case agreed, be rendered for the plaintiff.
 

 Pee Ceeiam. Judgment reversed.