C. V. JONES, Administrator c. t. a., d. b. n., of the Estate of J. B. WARREN, Deceased, MARGARET FARTHING CRISP and Husband, ROUNTREE CRISP, WILLIAM P. FARTHING and Wife, GAYNELLE TEER FARTHING, MRS. JENNIE REDMOND and Husband, W. P. REDMOND, v. WALTER WARREN and Wife, FRANCES WILLARD WARREN, J. B. MASON, R. P. READE, Trustee, DEPOSITORS NATIONAL BANK OF DURHAM, N. C., C. B. SHERMAN and W. K. RAND, Liquidating Trustees of the FIRST NATIONAL BANK OF DURHAM, N. C., A. A. McDONALD, C. A. McDONALD, L. P. McLENDON, Trustee, CITIZENS NATIONAL BANK OF DURHAM, ATLANTIC INVESTMENT COMPANY, W. S. LOCKHART, Trustee, THE MORRIS PLAN INDUSTRIAL BANK OF DURHAM, N. C., J. R. TURNAGE, DURHAM INDUSTRIAL BANK, SUSAN ELIZABETH WARREN, a Minor, JAMES W. WARREN, a Minor, CITY OF DURHAM, DURHAM COUNTY, A. C. CAVEDO, City Tax Collector, J. J. LAWSON, County Tax Supervisor, W. T. POLLARD, County Tax Collector, A. J. POLLARD, BANK OF COOLEEMEE, and All Other Heirs at Law, Devisees, Legatees and Beneficiaries, Whether In Esse or Not In Esse, of the Estate of J. B. WARREN, Deceased, and S. J. BENNETT, Guardian Ad Litem for SUSAN ELIZABETH WARREN and JAMES W. WARREN, Minors, and Guardian Ad Litem for All Other Heirs at Law, Devisees, Legatees and Beneficiaries, Whether In Esse or Not In Esse, of the Estate of J. B. WARREN, Deceased.

(Filed 15 June, 1938.)

1. **Executors and Administrators § 8: Descent and Distribution § 1—Land descends to heirs pending execution of power of sale by executor.**

   The will directed the executor to sell the residue of the realty, and divide the proceeds of sale into three equal parts to be held for the benefit of, and paid to each of executor's three children or heirs of the children. *Held:* Pending the execution of the power of sale by the executor, or the administrator with the will annexed, the land descended to the heirs.

2. **Executors and Administrators § 9—**

   An administrator with the will annexed has all the rights and powers, and is subject to the same duties, as if he had been named executor in the will. N. C. Code, 4170.

3. **Executors and Administrators § 15f: Descent and Distribution § 15—Mortgages executed by heir pending execution of power of sale by executor held equitable liens against heir's share of proceeds of sale.**

   The will in question directed the executor to sell the residue of the realty, divide the proceeds of sale into three parts, and directed that one part be given and bequeathed to testator's son. The son executed several mortgages on all the residuary lands of the estate, and more than a year after the execution of the last mortgage, several judgments were docketed against the son. The administrator with the will annexed sold the residuary real estate, and the assignee of the first docketed judgment claimed priority in the proceeds of sale belonging to the son. *Held:* The land descended to the heirs pending the execution of the power of sale by the

administrator with the will annexed, and the mortgage liens attached to the son's interest therein, and upon sale, the mortgages constituted an equitable lien against the son's share in the proceeds, and the mortgages have priority over the later docketed judgments, the order of priority being determined by the date of registration of the mortgages.

**4. Appeal and Error § 40a—**

It will be presumed on appeal, nothing else appearing, that the court found facts supporting its judgment.

APPEAL by A. J. Pollard from *Parker, J.*, at May Civil Term, 1937, of DURHAM. Affirmed.

J. B. Warren died testate in Durham County in 1913, and in his will he appointed J. B. Mason and Walter Warren as his executors. All of the legacies and devises made by J. B. Warren in the first twelve items of his will have been carried out and completed.

Item 13 of the will is as follows: "All the remainder and residue of my estate consisting of real estate, farming implements, farm products, horses, cows, and other property of whatever nature or kind, not herein specifically disposed of, I direct, authorize and fully empower my executors to sell, deliver and convey, to the best advantage, at either public or private sale, for cash or on credit, and as they may find advantageous sales thereof, and convert the same into money, and until such sales are made, I authorize and empower my executors to rent the real estate and collect the rents therefor, and out of the proceeds of such sales and out of any money that I may have on hand or in bank at my death, I direct my executors to pay my funeral expenses, the costs and charges of administration, all of my just debts and the pecuniary legacies in this will given and bequeathed, and the net balance to divide into three equal parts, one of these parts, or one-third of the said net balance, I direct my executors to pay to my son, Walter, and I give and bequeath the same to him. Another of the parts, or one-third of said net balance, I direct my executors to deposit in the Citizens National Bank of Durham, on four per cent interest certificates, if the said bank shall then be paying so great a rate of interest on deposits; if not, then I direct its investment in bonds of the United States, or the State of North Carolina, or in good and solvent county or municipal bonds, or other securities authorized by the United States Government to be accepted as security for the circulation of national banks, to be invested in such of the above securities that can be purchased at par and bear the highest rate of interest, and the net income received from such investment of the said one-third part, I direct my executors to pay to my daughter Jennie Redmond during her natural life and at her death, to deliver the securities in which said one-third shall be invested, to the survivor or survivors of my children, share and share alike, and to the issue of such as may be dead leaving issue, such issue to represent the deceased parent. The other

part, or one-third of said net balance, I direct my executors to deposit in the Fidelity Bank of Durham, on four per cent interest certificates, if the said bank shall then be paying so great a rate of interest on deposits; if not, then I direct its investment in the same class of securities as herein in this item directed for the investment of the share given for the use of my daughter Jennie Redmond, and the net income received from such investment of the said one-third part, I direct my executors to pay to my daughter Bessie T. Farthing during her natural life, and at her death to deliver the securities in which said one-third shall be invested, to such of her children as shall then be living, if they be of age, if not of age, then to the guardian of those under age, embracing the child or children of any deceased child or children, to whom I give and bequeath the said principal."

After the probate of the will, the executors named therein, J. B. Mason and Walter Warren, qualified as executors and acted as such until November, 1931, when they resigned and C. V. Jones was duly appointed, qualified and since that date has been acting as administrator *c. t. a., d. b. n.,* of the said will of J. B. Warren.

The three beneficiaries mentioned in Item 13 of the will, to wit: Walter Warren, Jennie Redmond and Mrs. Bessie T. Farthing, were all the children of J. B. Warren. Walter Warren and Mrs. Jennie Redmond are living and are parties to this action. Mrs. Bessie T. Farthing is dead. She left a will by which she devised and bequeathed her entire estate to her two children, William P. Farthing and Mrs. Margaret Farthing Crisp, both of whom, together with their wife and husband, respectively, are parties to this action.

At the time of their resignation as executors in 1931, the said J. B. Mason and Walter Warren had not sold the real estate comprising the residue of the J. B. Warren estate and referred to in Item 13 thereof. However, on 15 October, 1930, Walter Warren, in his individual capacity, and not as executor of the estate, borrowed $15,750 from the Bank of West Durham and executed and delivered note and deed of trust to secure it. This deed of trust was registered 15 October, 1930, in Durham County, where all the land left by the late J. B. Warren is situated. On 8 December, 1930, Walter Warren, in his individual capacity borrowed $15,300 from Citizens National Bank of Durham and executed and delivered his note and deed of trust to secure it. This deed of trust was registered 11 December, 1930, in Durham County, where all the land described therein is situated. On 1 August, 1931, Walter Warren, in his individual capacity, borrowed $3,000 from the Morris Plan Industrial Bank of Durham, and executed and delivered his note and deed of trust to secure it. This deed was registered on 4 August, 1931, in Durham County, where all the land described therein is situated. On the same date, to wit: 1 August, 1931, Walter Warren, in his

individual capacity, borrowed $5,000 from Durham Industrial Bank, and executed and delivered his note and deed of trust to secure it. The property described in this latter deed of trust is the same as that described in deed of trust given to secure his debt to Morris Plan Industrial Bank. This deed of trust was registered on 5 August, 1931, in Durham County, where the land described therein is situated. This is a second deed of trust.

Each one of the four deeds of trust above referred to described land which belonged to the residuary estate of J. B. Warren.

After all of the deeds of trust were registered, and more than a year after the most recent deed of trust was registered, a judgment was docketed against Walter Warren, in his individual capacity, in an action brought against him by Gurney P. Hood, N. C. Commissioner of Banks, *ex rel.* the Merchants Bank of Durham, in the sum of $5,500. This was docketed on 10 October, 1932, in Durham, Durham County. This judgment was later assigned to A. J. Pollard, the appellant in this case at bar. On 21 November, 1932, 1 March, 1934, 8 October, 1934, and 1 September, 1936, respectively, four other judgments were docketed in Durham County against Walter Warren, in his individual capacity.

The administrator *c. t. a., d. b. n.,* was ordered to sell all residuary property at public auction on 14 April, 1937. This was done by the administrator *c. t. a., d. b. n.,* and on 1 June, 1937, all the sales were confirmed by the court.

The judgment of Parker, J., rendered on 1 June, 1937, holding the deeds of trust constitute equitable assignments which should be paid from the Walter Warren one-third of the net proceeds derived from the sale of the land described in said deeds of trust, and that such deeds of trust were entitled to priority over the judgments later docketed, to the extent of the proceeds derived from the sale of the land included in the respective deeds of trust. The administrator *c. t. a., d. b. n.,* was directed by said judgments to disburse the net one-third of the proceeds derived from the sales belonging to the Walter Warren share in accordance with the order of priority.

The pertinent language in all the deeds of trust is as follows: "And whereas, said parties of the first part desire to secure and provide for the payment of said note at maturity, and to also provide for the prompt payment of interest thereon, as it matures according to the tenor of said note. . . . In order to carry out the intention expressed in the premises, the said parties of the first part have given, granted, bargained and sold, and do by these presents give, grant, bargain, sell, alien, assign and convey unto said party of the second part and his heirs and assigns; The following land, lying and being in Durham Township, in Durham County, in said State, and bounded and described as follows, to wit: (describing same)."

A. J. Pollard excepted and assigned error to the judgment as signed, and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.

*Victor S. Bryant and Wm. P. Farthing for plaintiffs.*
*Hedrick & Hall and L. P. McLendon for Citizens National Bank and Morris Plan Industrial Bank.*
*Basil M. Watkins for Durham Industrial Bank.*
*R. O. Everett for Harvey Harward, Trustee in Bankruptcy of Walter Warren.*
*Julius C. Smith, E. C. Bryson, and Forest A. Pollard for defendant A. J. Pollard.*

CLARKSON, J. Is the claim, the subject matter of this action, held by A. J. Pollard, assignee of Gurney P. Hood, Commissioner of Banks, founded upon a judgment docketed subsequent to the registration of the deeds of trust held by the appellee banks, superior to the claims of the appellee banks? We think not.

The judgment of the court below, in part, is as follows: "It is further ordered, considered, adjudged and decreed that the mortgages or deeds of trust heretofore given by Walter Warren referred to in the petition filed in this action do not constitute liens or encumbrances upon any of the real estate described in said deeds of trust or mortgages or in or against any undivided interest therein, but are merely equitable assignments of the interest of Walter Warren in and to the net proceeds derived from the sale of said real estate, and further that none of the judgments against Walter Warren constitute liens or encumbrances against any of the real estate owned by the estate of J. B. Warren, whether described in the complaint or not."

In the judgment rendered by the court below, under the facts and circumstances of this case, we think the right result has been reached. It may be that the liens of the deeds of trust attached to the land until sold and followed the proceeds.

N. C. Code, 1935 (Michie), section 4170, in part, is as follows: "An administrator with the will annexed has all the rights and powers, and is subject to the same duties, as if he had been named executor in the will."

In Item 13 of the will, above set forth, it is said, in part: "All the remainder and residue of my estate consisting of real estate," etc., is to be disposed of and one-third given and bequeathed to Walter Warren.

In *Ferebee v. Proctor,* 19 N. C., 439 (446), *Ruffin, C. J.,* said: "If the will does not devise the land, but creates a power to sell it, then, upon the execution of the power, the purchaser is in under the will, as if his name had been inserted in it as devisee. But, in the meantime, the land descends, and the estate is in the heir. The power is not the estate, but

only an authority over it, and a legal capacity to convey it. These are elementary maxims. But it is supposed that the testator had disposed of this land by directing a sale of it absolutely, and a division of the proceeds, so as to turn it out and out, as it is called, into personalty; and that this defeated the descent. When sold, the estate of the heir will certainly be divested; but such a provision in the will is only the creation of a power; it is a disposition of the proceeds of the land, but not a disposition of the land itself; and that consequently descends. The doctrine of conversion is purely equitable. The law knows nothing of it. A court of equity, by considering that as done which ought to be done, deals with land ordered to be sold as if it were sold. But a court of law always looks upon land as land, and has regard only to the legal title, which is unaffected by any power, whether it be a naked one, or coupled with an interest, or a trust until the power be executed." *Speed v. Perry,* 167 N. C., 122 (129).

In the *Speed case, supra* (p. 130), it is written: "The rule which we have just mentioned is well expressed in *Beam v. Jennings,* 89 N. C., 451. In that case, *Justice Ashe,* with his usual clearness and vigor of style, has stated the final conclusion in this Court upon the question whether, when a power of sale is conferred in a will, the land descends to the heirs or vests in the devisees until the power is fully executed. He remarks that, 'On this question there is, in the decisions of the courts and among the text-writers, considerable diversity of opinion. Some hold, with whom is Mr. Hargrave, in his note on Coke Litt., 113, that whether the devise be to the executors to sell the land, or that the executors shall sell, or that the land be sold by the executors, a fee simple will be vested in the executors; but in Sugden on Powers, 133, and Williams on Executors, 579, it is laid down that until a sale by the executors, where a power of sale of land is given by the will, the land descends in the interim to the heirs at law.' He then approves what is said by *Chief Justice Ruffin* in *Ferebee v. Proctor, supra"* (quoted above). *Barbee v. Cannady,* 191 N. C., 529; *Hoke v. Trust Co.,* 207 N. C., 604.

This action was commenced 23 September, 1933, some 20 years after the death of J. B. Warren. It will be noted that J. B. Warren directed the executor to pay his son Walter (Warren) one-third of the net balance "I give and bequeath the same to him." Suppose the executor or his successor had never sold the "remainder and residue" of the real estate, what would become of it? Who owned it? "The land descends in the interim to the heirs at law." We think the four deeds of trust before mentioned, which were duly recorded, from their language gave a lien on the real estate, and when sold and converted into money an equitable lien in their favor attached to same and the judgment pur-chased by the appellant Pollard was subject to the liens of said deeds of trust.

In *Munds v. Cassidey*, 98 N. C., 558 (563), we find it written: "The instrument is unmeaning unless the construction put upon it embraces the moneys to which the assignors would become entitled when the conversion is made by the executor."

R. O. Everett, Esq., was permitted upon his application to file brief as attorney for Harvey Harward, trustee of Walter Warren, bankrupt. From the view we take of this case, the trustee in bankruptcy has no interest in this controversy. The liens were acquired long before Warren's adjudication of bankruptcy, 18 June, 1937.

It will be noted that the trustees in the deeds of trust were careful and distinguished attorneys of long practice at the bar: R. Percy Reade, L. P. McLendon and W. S. Lockhart. They took these deeds of trust to secure large sums of money, relying no doubt on the decisions of this and other courts as followed by the learned and able judge in the court below.

The court, by consent and acquiescence of all parties, has found the facts and entered a final judgment. It will be presumed, nothing else appearing, that the court has found facts which will support the judgment. The judgment of the lower court should be sustained for the reason that the law, as interpreted by the courts of this State and others, is to the effect that the deeds of trust given by Walter Warren constituted equitable assignments of his interest in the proceeds of the sale of the property described therein, and that the judgment creditors have no lien against the land; and further, that the order of priority of registration of the deeds of trust is the correct rule to follow as between the mortgage creditors and judgment creditors of Walter Warren.

Upon the entire record, we think, for the reasons given, the judgment of the court below should be

Affirmed.